## UNITED STATES v. EASTERN COAL & MINING CO. et al. *
### No. 796.

Circuit Court of Appeals, Tenth Circuit.
Sept. 7, 1933.

Grady Lewis, Choctaw National Atty. and Special Asst. to Atty. Gen. (W. F. Rampendahl, U. S. Atty., of Muskogee, Okl., on the brief), for appellant.

B. Broaddus, of Muskogee, Okl., for appellee United States Fidelity & Guaranty Co.

James H. Gordon, of McAlester, Okl., for appellee Eastern Coal & Mining Co.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

LEWIS, Circuit Judge.

This suit is based on a coal mining lease made and executed under the provisions of section 29 of the Act of June 28, 1898 (30 Stat. 495, 505), on segregated lands of the Choctaw Tribe of Indians. The lease bears date September 26, 1899. It contains substantially the same provisions that lease No. 6 contained, which we have just considered in our opinion entitled United States of America v. Missouri-Kansas-Texas Railroad Company, et al., 66 F.(2d) 919, to which we refer. The two causes were consolidated for trial. This lease does not contain expressly the substance of the Secretary's regulations of May 22, 1900. It was executed before the adoption of that regulation. However, it does contain this:

"And the parties of the second part agree that this indenture of lease shall be subject in all respects to the rules and regulations heretofore or that may be hereafter prescribed under the said Act of June 28, 1898,

*Rehearing denied October 6, 1933.

by the Secretary of the Interior relative to mineral leases in the Choctaw and Chickasaw Nations. * * *"

In a subsequent document, in form a contract, between the two mining trustees for the Choctaw and Chickasaw Nations, who gave the lease, and James Degnan and James McConnell, who signed as lessees, we find this:

"Whereas, The form of said lease was, on the 18th day of December, 1899, changed by the Secretary of the Interior, under authority expressly given in section 29 of Act of Congress approved June 28, 1898, and the following words incorporated in said new form, to-wit:

" 'And said parties of the second part * * * will operate and produce coal from each and every lease, not less than the following quantities: Three thousand tons during the first year from date of approval of lease; four thousand tons the second year; seven thousand tons the third year; eight thousand tons the fourth year; and fifteen thousand tons the fifth and each succeeding year thereafter.' * * *

"Now, Therefore, The said Mineral Trustees and the said James Degnan and James McConnell, hereby consent and agree that said stipulations above quoted shall be, and the same hereby are, made a part of this lease, being the lease to which this certificate is attached."

Later with the Secretary's approval the lease was assigned to appellee, Eastern Coal and Mining Company, a corporation, and it gave bond with United States Fidelity and Guaranty Company, appellee, as its surety for performance.

There is attached to the bill of complaint an exhibit consisting of a statement of account of the tons of coal produced each year and the royalties paid by the lessee as to which there is no controversy, but for each of the years 1922, 1923, 1924, 1928, and 1929, the lessee produced from this lease less than 15,000 tons. It is given credit for royalties paid on what it did produce from this lease during those years, but is charged with royalties on 15,000 tons for each of those years, and the difference between royalties on the 15,000 tons and what the lessee paid on the tonnage it did produce amounts to $2,715.34, which appellant claims it is entitled to recover and have a lien therefor on the lessee's property on the premises. During one of those years (1923) no coal was produced from this lease, so the lessee was charged with $1,200 as royalty on 15,000 tons. During the

other four years (1922, 1924, 1928, and 1929) the lessee produced each year and paid royalties for each year on coal produced in excess of $500. Counsel agree that the statement of account was correct as to the number of tons mined and the amounts paid on the lease for each year. The account also shows that for the whole leasehold period the production from this lease amounted to more than twice as much in tonnage as the minimum tonnage required by the Secretary for each year and also paid more than twice as much in royalties had only the minimum tonnage required been produced.

As we held in the other case, so we hold in this, the lessee was not bound to comply with the requirements of the Secretary as to minimum tonnage, but as we pointed out in that case section 29 of the Act of June 28, 1898, expressly provides:

"All lessees shall pay on each coal or asphalt claim at the rate of one hundred dollars per annum, in advance, for the first and second years; two hundred dollars per annum, in advance, for the third and fourth years; and five hundred dollars for each succeeding year thereafter. All such payments shall be treated as advanced royalty on the mine or claim on which they are made, and shall be a credit as royalty when each said mine is developed and operated, and its production is in excess of such guaranteed annual advance payments, and all persons having coal leases must pay said annual advanced payments on each claim whether developed or undeveloped. * * * "

The lessee, not having made the $500 payment on this lease for 1923, and not having produced coal that year which in royalties would have amounted to more than $500, is liable to plaintiff for said $500. The court erred in not giving judgment therefor and in dismissing the bill.

Reversed with directions to enter such judgment in favor of appellant against appellees.